The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with respect to Findings of Fact 13, 14 and 15, Conclusions of Law 1, 2 and 3 and Award 1 and 2.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Shelby Mutual Insurance Company, now Anthem Casualty Group, was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on October 17, 1977, as a result of which the parties entered into the Form 21 Agreement. The plaintiff has received benefits pursuant to the Form 21 since October 18, 1977 through the present.
5. The plaintiff's average weekly wage was $320.00, which yields a compensation rate of $168.00 per week.
6. The issues for determination are:
 a. Whether the plaintiff is entitled to have the defendants pay for attendant care services provided by plaintiff's wife after February 20, 1997;
 b. Whether the plaintiff is entitled to as assessment of attorneys' fees, pursuant to N.C. GEN. STAT. § 97-88.1.
7. The parties stipulated the following medical reports into the record:
a. Forsyth Memorial Hospital,
b. North Carolina Baptist Hospital,
c. American Rehabilitation, Inc.,
d. Woodrow Wilson Rehabilitation Center,
 e. Charlotte Neurological Clinic, P.A., Dr. Dennis Hill,
f. NCDHR-Vocational Rehabilitation Services,
g. Neurologist Dr. Marvin P. Rozear,
h. Psychiatrist Dr. David B. Palmer,
 i. Demas Neurological Consultants, P.A., Dr. Ronald Demas,
j. NCIC Rehabilitation Section, Kathryn G. Hill,
k. Dr. John Nordan,
l. Dr. Winfrey E. Wicker, and
m. The Rehab Center, Alexander Manning, Ph.D.
 ************
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a sixty-five year old married male. Helen London, plaintiff's wife of forty-five years, is a sixty-two year old female. Prior to the plaintiff's injury, she worked with him in their business. She has been unable to work outside the home since the accident. Mrs. London also shares the responsibility of caring for her elderly mother who has Alzheimer's disease and heart problems. Mrs. London keeps her mother in her home for three weeks at a time, and her sister keeps the mother for three weeks.
2. On October 17, 1977, the plaintiff sustained an injury by accident arising out of and in the course of his employment when the vehicle he was driving was rear-ended in a motor vehicle accident. Following the admittedly compensable injury, the plaintiff was diagnosed with chronic brain syndrome secondary to post-traumatic damage with a right cerebral contusion, bilateral frontal subdural hematomas, and left hemiparesis.
3. The plaintiff was hospitalized following the accident, and was placed in the Whitaker Center at Forsyth Hospital for physical, occupational and speech therapies. The plaintiff was discharged on January 12, 1978. On January 3, 1984, the plaintiff was admitted at the Woodrow Wilson Rehabilitation Center in Fisherville, Virginia, where he was found to have bilateral cerebral hemisphere dysfunction. However, after he refused to participate in an evaluation for electronic technician training, the plaintiff was discharged on January 13, 1984.
4. As a result of the frontal lobe injury, the plaintiff wakes up very early in the mornings, around 3:00 or 4:00 a.m., and wanders about his home. The plaintiff also retains cognitive impairments which affect his personality and judgment, including obsessive/compulsive behavior, difficulty recognizing danger, immature decision-making, spontaneous actions, lack of patience, frustration with changes to his routine, anger, and a child-like dependency on his wife. Mrs. London had to keep the plaintiff under her supervision in order to keep him from being injured. The plaintiff continues to have left side weakness as a result of the injuries sustained in the accident.
5. The plaintiff is able to use the bathroom, bathe, reheat food in the microwave oven, feed, and dress himself. However, he forgets to change into clean clothes unless his wife places them out for him and removes the dirty clothes. While he can cook, the plaintiff has forgotten to turn the stove off after using it, and does not recall what an oven is. Helen London must prepare plaintiff's meals, leave him daily notes about where his breakfast is and how to prepare it, and handle all of the household finances due to plaintiff's limitations.
6. From December 13, 1977 through December 3, 1990, Kathryn Hill, R.N., a rehabilitation coordinator with the North Carolina Industrial Commission, was assigned to plaintiff's case. In her February 1978 report, Nurse Hill recommended that the carrier pay Mrs. London for attendant care she provided for her husband.
7. The plaintiff is able to operate his motor vehicle, retains a driver's license, drives approximately thirty miles from his home in China Grove, North Carolina, to the flea markets in the Lexington, North Carolina, vicinity to three flea markets each Saturday, where he sells coffee and sandwiches. He is able to make change and deposit money at the bank, as well as obtaining propane for the truck and food supplies for the items he sells at the flea markets. In addition, the plaintiff and his wife have custody of their nine year old grandson, and the plaintiff regularly drives the child to and from school.
8. The plaintiff is able to tend his lawn, including using push and riding lawnmowers. However, the plaintiff is obsessive about the lawn, and he will mow over rocks, leaves, tree limbs, and other obstacles on their four and one-half acres of land. He mows the lawn year round, even in the snow, and will lower the blade to the point of shaving the lawn. The plaintiff has also set the lawn on fire twice, for which the local fire department had to be called. The plaintiff also raises fruit and vegetables. However, he will pick fruit from the trees before it has the opportunity to ripen, and he will till under the vegetables before they are ready.
9. Barbara Armstrong, a life care planning specialist, found that the plaintiff was in need of twenty-four hour per day attendant care. Ms. Armstrong was present in the courtroom where she testified for approximately two hours.
10. In 1996, Alexander Manning, a neuropsychologist retained by plaintiff's counsel, evaluated the plaintiff and opined that the plaintiff did not require twenty-four hours per day attendant care, but only required someone to check on him every few hours.
11. Dr. C. Thomas Gualtieri, a board certified psychiatrist and expert in neuropsychiatry, evaluated the plaintiff on May 6, 1997. Dr. Gualtieri found the plaintiff to be ambulatory, verbal, oriented, able to drive, and completely independent. After reviewing plaintiff's treatment file and examining the plaintiff, Dr. Gualtieri opined that the plaintiff does not require attendant care as his wife provided care through the normal spousal obligations. The doctor further opined that the plaintiff requires daily supervision in the form of someone to check on him every few hours.
12. Since February 20, 1997, the plaintiff requires attendant care services only a few minutes at a time, every three to four hours per day to ensure that he is having no difficulties. However, due to the sporadic nature and due to the minimum billing required by most agencies, it is not reasonable to expect a home health care agency to provide this type of service for the plaintiff, and it would be confusing for the plaintiff if he received care from many people. Furthermore, it would not be in the plaintiff's best interest to have multiple caregivers due to the confusion a change in his routine would pose.
13. Unskilled attendant care services in the area through a home health agency would be at a rate of $6.00 per hour unless the market requires a higher rate otherwise.
14. Plaintiff's wife has been providing this care for the plaintiff, and she is capable of continuing to provide the supervision which is required.
15. There are times when plaintiff's wife needs outside help in providing attendant care. Persons willing to come into a home for attendant care will usually want to have a minimum of eight hours in any given day.
 *************
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury, the plaintiff is entitled to have the defendants pay for eight hours per day, seven days per week, of attendant care services for the period from February 20, 1997, and continuing, at the rate of $6.00 per hour, to be provided by the plaintiff's wife. N.C. GEN. STAT. § 97-2(6).
2. There may be occasions when plaintiff's wife is unable to obtain outside help at the rate of $6 per hour. On those occasions, defendant shall pay a reasonable hourly amount for such outside care, not to exceed eight hours in any given day.
3. There is no evidence to support a finding that the defendants defended this action without reasonable grounds; therefore, the plaintiff is not entitled to an assessment of attorney's fees. N.C. GEN. STAT. § 97-88.1.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay compensation to the plaintiff's wife for attendant care services for eight hours per day, seven days per week at the rate of $6.00 per hour for the period from February 20, 1997 and continuing. As much of said compensation as has accrued shall be paid in a lump sum.
2. Outside help shall be paid at $6 per hour if available at that rate or at a reasonable other hourly rate if not available at $6 per hour.
3. Defendants shall pay the costs, including expert witness fees as follows:
a. $250.00 to C. Thomas Gualtieri, M.D.,
b. $400.00 to Alexander Manning, Ph.D.,
c. $160.00 to Kathryn Hill, R.N., and
d. $130.00 to Barbara Armstrong.
This 6th day of October 1998.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER